IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DAMON COATES, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>DISCOUNT TIRE COMPANY OF NEBRASKA, INC., a Nebraska Corporation;<br><br>Defendant. | 8:20-CV-139<br><br>MEMORANDUM AND ORDER |

## I. INTRODUCTION

Damon Coates has sued Discount Tire Company of Nebraska, Inc., ("Discount Tire") for violating the Americans with Disabilities Act ("ADA") and the Nebraska Fair Employment Practices Act ("NFEPA"), as well as for common-law retaliation. Before the Court is Discount Tire's Motion for Summary Judgment. Filing 49. For the reasons stated herein, the Court grants Discount Tire's motion.

## II. BACKGROUND

Coates began working at Discount Tire in October of 2008. Filing 51-3 at 6. In February of 2015, Discount Tire promoted Coates to store manager at its Omaha, Nebraska, location. Filing 51-3 at 8–9. Coates held this position until Discount Tire changed his position to comanager in 2017.[1] Filing 51-3 at 8-9.

---

[1] The parties dispute whether Coates becoming comanager was a demotion. Filing 51-3 at 9, 13; Filing 52 at 9.

1

On November 30, 2017, while Coates was working outside inspecting a vehicle, a car drove quickly towards the garage and turned directly at him. Filing 51-3 at 28. Coates dove out of the way and landed on his right hip and lower back, causing him injury. Filing 51-3 at 28. According to Coates, his injury causes him severe back pain while lifting items at home and at work. Filing 51-3 at 27. He is unable to sit or stand for long periods of time, and must refrain from repetitive bending, twisting, or stooping. Filing 51-3 at 27, 30–31. Coates notified the Nebraska Workers' Compensation Court of his injury shortly after becoming injured. Filing 51-17 at 2.

In April of 2018, Discount Tire demoted Coates to senior assistant store manager. Filing 51-3 at 9–10. Discount Tire contends that it demoted Coates due to several performance issues. Filing 51-7 at 18; Filing 51-8 at 3–4. Coates claims his demotion stemmed from his inability to perform managerial functions, citing notes written by one of his superiors stating, "There's not a co-manager spot available for people who are not able to perform the functions of manager." Filing 51-12 at 8, 11; Filing 52 at 9.

While continuing to work at Discount Tire, Coates refrained from lifting heavier items, installing tires, or performing other similar duties. Filing 51-3 at 31, 33, 36. On October 16, 2018, Coates tried changing trailer tires, but noticed a significant increased level of thoracic pain at the end of the day. Filing 51-3 at 39. Afterwards, his physician recommended that he take a functional capacity evaluation ("FCE") to determine appropriate work restrictions going forward. Filing 51-3 at 39. On the pre-FCE questionnaire, Coates reported that he has close to a 100% limitation on lifting items and must stop and stretch periodically while performing activities. Filing 51-3 at 41. Coates also wrote that he cannot sit for more than one hour and is unable to stand for longer than a half hour. Filing 51-3 at 41. The FCE results stated that Coates had significant limitations on his ability to bend and stoop, twist, and carry items. Filing 51-3 at 43. The FCE report concluded,

2

"Based on [Coates's] job description, it does not appear that he can complete all the components of his job description as they are written." Filing 51-3 at 42. Pursuant to the FCE report, Coates's physician cleared him to work with permanent restrictions as recommended by the FCE. Filing 51-3 at 45.

On January 18, 2019, Discount Tire terminated Coates's employment. Filing 51-3 at 46. Discount Tire claims it terminated Coates's employment because he could not perform his essential job functions after being permanently restricted pursuant to the FCE. Filing 51-7 at 17; Filing 51-35 at 7. Before terminating him, Discount Tire claims it looked at alternative positions for Coates but could not find one that he qualified for or could perform with his permanent restrictions. Filing 51-35 at 4–6. Discount Tire also contends that there were no reasonable accommodations available that would have allowed Coates to continue working as a senior assistant store manager. Filing 51-8 at 4; 51-9 at 3. Coates disputes this contention, arguing that he was able to work by performing the duties outlined in his Areas of Responsibilities[2] instead of in the senior assistant store manager job description and refraining from lifting and performing other similar physical activity. Filing 51-3 at 50. He also believes Discount Tire could have purchased a mechanical device to assist him in lifting items. Filing 51-3 at 50. Finally, Coates claims that Discount Tire could have transferred him to a different position. Filing 51-3 at 53, 60.

Coates filed a discrimination claim with the Equal Employment Opportunity Commission, which sent a Right to Sue letter to him on March 2, 2020. Filing 51-41 at 10. Two days later, Coates sued Discount Tire in Nebraska state court. Filing 1 at 1. In his Complaint, Coates alleged that Discount Tire terminated his employment because of his disability in violation of the ADA

---

[2] It is not clear from the record what duties were outlined in the "Areas of Responsibilities," but apparently they did not include the same physical requirements as required in the assistant senior store manager job description. Filing 51-3 at 8, 50.

3

and the NFEPA. Filing 1-1 at 7–10. Coates also asserted a claim for common-law retaliation, arguing that Discount Tire retaliated against him for filing a workers' compensation claim by demoting him and then later terminating him. Filing 1-1 at 10–11. Discount Tire removed the action to this Court on April 10, 2020. Filing 1. On August 6, 2020, Discount Tire filed its Motion for Summary Judgment. Filing 49.

### III. ANALSYIS

#### A. Standard of Review

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except* the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "an absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (citing *Celotex*, 477 U.S. at 323). Instead, "the burden

on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than 'the mere existence of *some* alleged factual dispute'" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

## B. Discrimination Under the ADA

Discount Tire argues that Coates cannot establish a prima facie case of disability discrimination under the ADA. Filing 50 at 20. According to Discount Tire, Coates cannot show that he is disabled within the meaning of the ADA, nor can he demonstrate that he was qualified to perform the essential functions of his job. Filing 50 at 19. Coates responds by claiming that he is disabled under the ADA because his back pain substantially limits one or more of his major life activities, and that he was qualified to perform his job with a reasonable accommodation. Filing 52 at 26–33. The Court concludes that Coates is not a qualified individual under the ADA, and therefore summary judgment on his ADA claim is warranted.[3]

---

[3] Because the Court concludes Coates is not a qualified individual, it need not venture into the issue of whether Coates is disabled under the ADA.

The ADA prohibits discrimination against any "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). "Discrimination" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Id.* at § 12112(b)(5)(A). To make a prima facie case of discrimination under the ADA, the plaintiff must show that he "(1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) has suffered an adverse employment action because of [his] disability." *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013). A qualified individual is one who (1) possesses the "requisite skill, education, experience, and training for his position," and (2) is able to "perform the essential job functions, with or without reasonable accommodation." *Fenney v. Dakota, Minn. & E. R. Co.*, 327 F.3d 707, 712 (8th Cir. 2003) (quoting *Benson v. Nw. Airlines, Inc.*, 62 F.3d 1108, 1113 (8th Cir. 1995)). When an employee requires an accommodation to perform an essential job function, he must show that "a reasonable accommodation is possible." *Id.* (quoting *Benson*, 62 F.3d at 1113). The burden then shifts to the employer "to show that it is unable to accommodate the employee." *Id.* (quoting *Benson*, 62 F.3d at 1113).

For the purposes of this motion, Coates concedes that he could not perform the essential functions of his job without a reasonable accommodation. Filing 52 at 32. The only issue to resolve, therefore, is whether Coates has shown that a reasonable accommodation is possible. Coates lists five ways in which he claims Discount Tire could have accommodated his disability. They include (1) limiting Coates's duties to those outlined in the Areas of Responsibilities instead of the duties in his job description, (2) waiving the lifting requirements and other physical requirements of his position, (3) making other employees fulfill his lifting requirements and other physical requirements, (4) purchasing a mechanical device to assist with lifting, and (5) transferring him to a vacant position. Filing 51-3 at 50, 53, 60.

6

The first three requests are not reasonable accommodations under the ADA. While "there is no precise test for what constitutes a reasonable accommodation, . . . an accommodation is unreasonable if it requires the employer to eliminate an essential function of the job." *E.E.O.C. v. Convergys Customer Mgmt. Grp., Inc.*, 491 F.3d 790, 796 (8th Cir. 2007) (citing *Dropinski v. Douglas Cnty., Neb.*, 298 F.3d 704, 709 (8th Cir. 2002)). In this case, Discount Tire contends that the essential functions of the senior assistant store manager include being able to bend, twist, and crouch, as well as lifting, pushing, and pulling items of various weights throughout the workday. Filing 51-6 at 3 (job description form); *see Nagel v. Sykes Enters., Inc.*, 383 F. Supp. 2d 1180, 1192 (D.N.D. 2005) (considering job description form while determining essential job functions). Moreover, Discount Tire claims that senior assistant store managers regularly helped install and remove tires, load and unload inventory and supplies, and train employees. Filing 51-6 at 6; Filing 51-8 at 2–3; Filing 51-9 at 3–4; *see Knutson v. Schwan's Home Serv., Inc.*, 711 F.3d 911, 914 (8th Cir. 2013) ("The employer's judgment about an essential job function 'is considered highly probative.'" (quoting *Duello v. Buchanan Cnty. Bd. of Supervisors*, 628 F.3d 968, 972 (8th Cir. 2010))). While Coates disputes that he regularly had to assist in lifting items and removing and installing tires, he does admit that, prior to his injury, he occasionally helped move scrap tires to a scrap room, unload inventory from trucks, and load tires and wheels for customers.[4] Filing 51-3 at 63; *see Knutson*, 711 F.3d at 915 (holding that, even though the plaintiff claimed to rarely drive a delivery truck in his position, being "qualified to drive a delivery truck [was] an essential function of [the plaintiff's] position"); *see also Dropinski*, 298 F.3d at 709 ("[T]he plaintiff's specific personal experience is of no consequence in the essential functions equation. Instead, it is the

---

[4] Coates also does not contest the fact that his inability to bend, stoop, or twist frequently, or lift or carry weights over twenty pounds means that he cannot perform the essential functions of his job. Filing 52 at 18.

7

written job description, the employer's judgment, and the experience and expectations of all [employees in that position] generally which establish the essential functions of the job.").

Given that the lifting requirements and other physical requirements were essential job functions of the assistant senior store manager position, Coates's request to limit his duties to those outlined in the Areas of Responsibilities[5] and waive the lifting and other physical requirements of his job is unreasonable. *See Knutson*, 711 F.3d at 916 (noting that "an accommodation is unreasonable if it requires the employer to eliminate an essential function of the job." (quoting *Convergys*, 491 F.3d at 796)). Nor would it be reasonable to expect other employees to perform the requirements of Coates's job. *Id.* at 916 ("[T]he employer 'is not required to reassign existing workers to assist [the employee] in his essential duties.'" (second alteration in original) (quoting *Dropinski*, 298 F.3d at 709)).

Coates also claims that Discount Tire could have reasonably accommodated him if it had purchased a mechanical device to assist in lifting wheels and tires on and off cars. Filing 51-3 at 60. However, besides his own testimony about his awareness of a such a device, Coates presents no evidence of what the device is or whether it was practical in his work environment. *See Benson*, 62 F.3d at 1112 (noting that a plaintiff must make "a facial showing that reasonable accommodation is possible"); *cf. Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 954 (8th Cir. 1999) (holding, in the context of responsibilities during the interactive process, "[t]he employee still carries the burden of showing that a particular accommodation rejected by the employer would have made the employee qualified to perform the essential functions of the job"). Additionally, even assuming such a device existed at the time Discount Tire terminated him, lifting wheels and

---

[5] Moreover, Coates has failed to provide the Court with evidence of the duties outlined in the Areas of Responsibilities, although the Court is able to discern that it did not include the same physical requirements outlined in his job description. This failure is a sufficient basis, standing alone, to find that Coates cannot show that limiting his duties to those outlined in the Areas of Responsibility is a reasonable accommodation.

tires on and off cars was only one of the several physical requirements of Coates's job. The device would not help Coates unload inventory, roll tires, or assist him in bending, twisting, and crouching when necessary. *See Cover v. J.C. Penney Corp., Inc.*, 187 F. Supp. 3d 1079, 1090 (D. Minn. 2016) (finding that, even with the help of a device, the plaintiff "was still unable to perform any other essential function of the . . . position"); *see also Otto v. City of Victoria*, 685 F.3d 755, 759 (8th Cir. 2012) (stating that the plaintiff "cites no evidence suggesting that a [requested accommodation] would have addressed his work restrictions concerning heavy lifting"). Thus, even with this accommodation, Coates could still not perform several of the essential functions of his job. *See Gardea v. JBS USA L.L.C.*, No. 4:15-CV-00474-JAJ, 2017 WL 5904675, at *7 (S.D. Iowa May 11, 2017), *aff'd sub nom. Gardea v. JBS USA, LLC*, 915 F.3d 537 (8th Cir. 2019) ("Courts, including the Eighth Circuit Court of Appeals, have uniformly rejected assistance in lifting as a reasonable accommodation.").

Finally, Coates is unable to demonstrate that Discount Tire could have reasonably accommodated him by transferring him to a vacant position. While the ADA recognizes that reassignment to a vacant position is a possible accommodation, 42 U.S.C. § 12111(9)(B), it is subject to several constraints. First, because "the very prospect of reassignment does not even arise unless accommodation within the individual's current position would pose an undue hardship . . . reassignment is an accommodation of last resort." *Cravens v. Blue Cross & Blue Shield of Kan. City*, 214 F.3d 1011, 1019 (8th Cir. 2000) (internal quotation marks and citations omitted). Additionally, the employee must be seeking "an existing position within the company; the employer is not required to create a new position as an accommodation." *Id.* Furthermore, the employee must be "otherwise qualified for the reassignment position." *Id.* (internal quotation

9

marks omitted). An employer is permitted to hire the "most qualified candidate" for a vacant position. Huber v. Wal-Mart Stores, Inc., 486 F.3d 480, 483 (8th Cir. 2007).

Coates has not identified a vacant position that was available to him.[6] Based on the record in this case, all but one of the positions to which Discount Tire could have transferred him required the same or greater physical requirements than his current one. Filing 51-6 at 2–5 (store employee job description form); Filing 51-35 at 4–5; Filing 51-38 at 2–3 (available positions form); Filing 51-39 at 2–11 (work roster). For example, all store positions require employees to be able to load; unload; stack; and move tires, wheels, and supplies. Filing 51-6 at 2. Moreover, the one vacant position available, an administrative assistant position, required a "minimum of three years of administrative experience in an office environment." Filing 51-40 at 2. Coates does not have any administrative experience. Filing 51-3 at 6–8; see Cravens, 214 F.3d at 1019 ("[T]he employee must be otherwise 'qualified' for the reassignment position."). Ultimately, Discount Tire hired a person with over four years of administrative-assistant and accounts-payable experience prior to terminating Coates. Filing 51-2 at 4; see Huber, 486 F.3d at 480 ("[T]he ADA . . . does not require an employer to reassign a qualified disabled employee to a vacant position when such a reassignment would violate a legitimate nondiscriminatory policy of the employer to hire the most qualified candidate.").

Coates is unable to show that a reasonable accommodation was possible.[7] Thus, as a matter

---

[6] Of course, Coates "does not have the burden of identifying open positions without [Discount Tire's] assistance." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 316 (3d Cir. 1999). The problem for Coates in this case is that despite Discount Tire producing its complete workplace roster in the region and job openings, he is still unable to demonstrate any vacant position to which he could have been transferred.

[7] Coates spends much of his Brief in Opposition arguing that Discount Tire failed to engage in an interactive process with him to reach a reasonable accommodation. Filing 52 at 32–38. However, "[T]here is no per se liability under the ADA if an employer fails to engage in an interactive process . . . ." Cravens, 214 F.3d at 1021. Coates would have to show that he "requested an accommodation" and that his "disability could have been reasonably accommodated had the interactive process taken place." Garrison v. Dolgencorp, LLC, 939 F.3d 937, 941 (8th Cir. 2019). Coates has failed to show he asked for an accommodation or that a reasonable accommodation was ever available. Therefore, it is inconsequential that Discount Tire allegedly failed to engage in the interactive process.

of law, he is not a qualified individual under the ADA. Accordingly, Discount Tire is entitled to summary judgment on Coates's claim of disability discrimination.[8]

### C. Discrimination Under the NFEPA

Coates also brings a claim of discrimination under the NFEPA. Filing 1-1 at 9–10. The definition of "qualified individual with a disability" in the NFEPA is "virtually identical to the definition[] of the ADA." *Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 723 (8th Cir. 2002) (overruled on other grounds); *see also* Neb. Rev. Stat. § 48-1102(10). Thus, claims under the NFEPA are analyzed by looking to federal decisions. *See Ryan v. Cap. Contractors, Inc.*, 679 F.3d 772, 777 (8th Cir. 2012) ("In construing the NFEPA, Nebraska courts have looked to federal decisions, because the NFEPA is patterned after Title VII and the ADA." (quoting *Orr*, 297 F.3d at 723)). The Court has concluded that Coates is not a qualified individual under the ADA. Therefore, his NFEPA claim fails as well. *See Morriss v. BNSF Ry. Co.*, 817 F.3d 1104, 1106 n.2 (8th Cir. 2016) ("Because disability-discrimination claims under the NFEPA are analyzed under the same framework as claims brought under the ADA, we need not conduct a separate analysis of [the plaintiff's] state-law claims.").

### D. Common-Law Retaliation

Coates's final claim is for common-law retaliation. Filing 1-1 at 19–11. In this claim, Coates alleges that Discount Tire retaliated against him for filing a workers' compensation claim by demoting him and later terminating his employment. Filing 1-1 at 10. Discount Tire argues that

---

[8] Coates also claims that his demotion to senior assistant store manager was a form of disability discrimination. Filing 52 at 38. However, Discount Tire has submitted ample evidence that Coates's demotion stemmed from nondiscriminatory reasons, such as failing to run the store effectively and putting his needs over that of the store's. Filing 51-7 at 18; Filing 51-8 at 3–4; Filing 51-12 at 7–8. Moreover, Coates has not put forth any evidence that this explanation is pretextual. *See Bharadwaj v. Mid Dakota Clinic*, 954 F.3d 1130, 1135 (8th Cir. 2020) (affirming grant of summary judgment when the plaintiff did not produce sufficient evidence of pretext).

11

Coates cannot establish a causal link between his demotion and termination and his filing of a workers' compensation claim. Filing 50 at 31–32. The Court agrees.

In an unlawful retaliation claim, the plaintiff must show that he "participated in a protected activity, that the employer took an adverse employment action against him or her, and that a causal connection existed between the protected activity and the adverse employment action." *Riesen v. Irwin Indus. Tool Co.*, 717 N.W.2d 907, 915 (Neb. 2006). "Proximity in time between the claim and discharge is a typical beginning point for proof of a causal connection." *Id.* at 916 (quoting *Rebarchek v. Farmers Co-op. Elevator*, 35 P.3d 892, 899 (Kan. 2001)). Moreover, "A plaintiff supports an assertion of retaliatory motive by demonstrating proximity in time between the workers' compensation claim and the firing, along with evidence of satisfactory work performance and supervisory evaluations." *Id.*

Coates's only argument that there is a causal connection in this case is that he was regularly promoted until after his injury, and that several months after filing his workers' compensation claim Discount Tire demoted him. Filing 52 at 40–41. This is insufficient. First, Coates filed his workers' compensation claim on December 5, 2017, Filing 51-17 at 2, which was four months before his demotion. Filing 51-3 at 9–10. A four-month gap between the claim and demotion is too large to establish an inference of retaliation. *See Lewis v. St. Cloud State Univ.*, 467 F.3d 1133, 1138 (8th Cir. 2006) ("We have held that an interval as brief as two months did not show causation for purposes of establishing a retaliation claim, and that a two-week interval was sufficient, but barely so." (internal quotation marks and citations omitted)); *Brock v. Dunning*, 854 N.W.2d 275, 293 (Neb. 2014) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very

close.'" (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001))). Moreover, Discount Tire has submitted ample evidence that Coates's demotion stemmed from nondiscriminatory reasons, such as failing to run the store effectively and putting his needs over the store's needs.[9] Filing 51-3 at 23; Filing 51-7 at 18; Filing 51-8 at 3–4; Filing 51-12 at 7–8, 12–14. Coates has not put forth any evidence showing that this explanation is pretextual. *See Teetor v. Dawson Pub. Power Dist.*, 808 N.W.2d 86, 93 (Neb. Ct. App. 2012) (affirming summary judgment where the plaintiff presented no evidence that nondiscriminatory explanation for adverse employment action was pretextual). Therefore, Discount Tire is entitled to summary judgment on Coates's common-law retaliation claim.

## IV.     CONCLUSION

Discount Tire is entitled to summary judgment on Coates's claims as a matter of law. Accordingly,

IT IS ORDERED:

1. Discount Tire's Motion for Summary Judgment, Filing 49, is granted;
2. Coates's Complaint, Filing 1-1, is dismissed; and
3. The Court will enter a separate judgment.

Dated this 27th day of October, 2021.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge

---

[9] The record shows that Discount Tire had concerns with Coates's performance as a manager before his injury. For example, a July 10, 2017, email from one of his supervisors details issues with Coates's development as a manager and was sent several months prior to his injury on November 30, 2017. Filing 51-3 at 28; Filing 51-12 at 14.

13